# BRACEWELL

March 30, 2020

**BY ECF**

Hon. Analisa Torres
United States District Court
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   United States v. Morris Zukerman (16 Cr. 194)

Dear Judge Torres:

We write on behalf of our client, Morris Zukerman, to respectfully request that his sentence be modified pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. Mr. Zukerman presently is incarcerated at the minimum security satellite camp at FCI Otisville. On Friday, March 27, 2020, Otisville staff informed the residents that an inmate at the camp had tested positive for COVID-19.[1] Mr. Zukerman is 75 years old and suffers from diabetes, hypertension, and obesity.[2] As a result of both his age and medical status, should Mr. Zukerman become infected, he faces a substantial risk of suffering a severe form of the disease or even death. (*See* Ex. B ("Mr. Zukerman is in the highest risk category for complications and death from the disease.").) We ask that you find that the risk COVID-19 poses to Mr. Zukerman's health amounts to an "extraordinary and compelling" circumstance that warrants transferring Mr. Zukerman to supervised release with a special condition of home confinement for the duration of his sentence.

On June 27, 2017, Mr. Zukerman pled guilty to one count of tax evasion and one count of corrupt or forcible interference for obstructing the administration of the internal revenue laws. This Court sentenced him to 70 months' incarceration followed by one year of supervised release. The Court also imposed a fine of $10,000,000 and ordered that $37,574,951.88 be paid in restitution. (*See* Dkt. No. 58.) Mr. Zukerman self-surrendered to FCI Otisville on June 26, 2017,

---

[1] The Bureau of Prisons' website tracking COVID-19 confirms that an inmate at Otisville has been diagnosed. *See* Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/.

[2] Mr. Zukerman was diagnosed with these conditions before he was incarcerated. (*See* Exhibit A.)

**Paul Shechtman**
Partner

T: +1.212.508.6107          F: +1.800.404.3970
1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100
paul.shechtman@bracewell.com          bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

March 30, 2020
Page 2

and he has paid the fine and restitution in full.  (*See* Dkt. No. 109.)  Under the First Step Act, Mr. Zukerman has been approved for release to home confinement in a little over a year, on May 16, 2021.[3]  He has maintained an unblemished disciplinary record while incarcerated, and he has been classified by the BOP as having minimum risk of recidivism.

As you are aware, COVID-19 is highly contagious and is spreading at a rapid rate.  In New York state, more than 66,000 individuals have tested positive for the virus, resulting in at least 1,200 deaths.  Orange County -- where FCI Otisville is located -- has registered over 1,400 cases, and New York City, located an hour-and-a-half drive from Otisville, has reported over 37,000 cases.[4]  According to the World Health Organization, the populations most at risk of suffering a severe form of the disease include "[o]lder people, and those with underlying medical problems like cardiovascular disease [and] diabetes."[5]  The CDC similarly has explained that individuals over the age of 65 and people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity are at higher risk for severe illness from COVID-19.[6]  Recently released data demonstrates that the risk is substantial. The CDC reports that approximately 80% of deaths from COVID-19 in the United States occur in individuals age 65 or older, and that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent.[7]  Additionally, within a recently examined sample of COVID-19 patients in Italy, 73.8 percent of those who died from the disease suffered from hypertension; 33.9 percent suffered from diabetes.[8]

---

[3] Should the First Step Act be clarified to account for "good time" credits, Mr. Zukerman's release date would be even sooner.  *See* Durbin, Lee Introduce Bill To Allow Nonviolent Elderly Prisoners Eligible for Release to Home Confinement To Benefit From Good Time Credit, Dec. 12, 2019, https://www.durbin.senate.gov/newsroom/press-releases/durbin-lee-introduce-bill-to-allow-nonviolent-elderly-prisoners-eligible-for-release-to-home-confinement-to-benefit-from-good-time-credit.

[4] Coronavirus in the U.S.:  Latest Map and Case Count, NY Times, Mar. 28, 2020, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=Spotlight&pgtype=Homepage.

[5] Coronavirus, World Health Organization, Mar. 23, 2020, https://www.who.int/health-topics/coronavirus#tab=tab_1.

[6] People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, Mar. 22, 2020, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html.

[7] Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020, Centers for Disease Control and Prevention, Mar. 26, 2020, https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm.

[8] *See* Characteristics of COVID-19 Patients Dying in Italy, Report Based on Available Data on March 20, 2020, Istituto Superiore Di Sanita, https://www.epicentro.iss.it/coronavirus/bollettino/Report-COVID-2019_20_marzo_eng.pdf.

**BRACEWELL**

March 30, 2020
Page 3

As this Court has recognized, "[t]he risk of contracting COVID-19 in tightly-confined spaces, especially jails, is now exceedingly obvious." *Basank v. Decker*, 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020).  One public health expert has explained:  "If you wanted to set up a situation that would promote rapid transmission of a respiratory virus, you would say prison:  it's close quarters, unsanitary, individuals in frequent contact."  In such situations, it is "nearly impossible to provide infection control."[9]  Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails" as "extraordinarily high" due not only to the close quarters in which the inmates reside, but also the quality and quantity of available medical care and the fact that hundreds of individuals -- from staff to new arrestees -- enter and leave detention facilities daily.[10]  These dangers are not theoretical.  During the COVID-19 outbreak in China, prisons became hotbeds of infection despite stringent control measures, and press reports indicate that the same is now occurring at FCI Oakdale in Louisiana.[11]

The CDC has recommended that high-risk individuals avoid crowds, keep space between themselves and others, and stay at home to avoid exposure to the virus.[12]  Despite BOP's best efforts, it is impossible for Mr. Zukerman to practice such "social distancing" to protect himself.  In the Otisville camp, 120 inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers, and sleep together in bunks beds only a few feet apart that are divided principally between two dormitories (as opposed to individual cells).  The two dormitories are separated only by the shared bathroom.  There is no place to self-isolate.  In short, measures being taken by BOP cannot help but be insufficient.  *See Basank*, 2020 WL 1481503, at *5.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary

---

[9] Daniel A. Gross, "'It Spreads Like Wildfire':  The Coronavirus Comes to New York's Prisons," The New Yorker, Mar. 24, 2020.

[10] Brie Williams, COVID-19 in Correctional Settings, Mar. 22, 2019, https://www.scribd.com/document/452807558/NY-Press-Conference-Brie-Williams-Remarks.

[11] Zi Yang, "Cracks in the System:  COVID-19 in Chinese Prisons," The Diplomat, Mar. 9, 2020, https://thediplomat.com/2020/03/cracks-in-the-system-covid-19-in-chinese-prisons/; Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana," Washington Post, Mar. 29, 2020, https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html

[12] Get Ready for COVID-19, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/get-ready.html.

**BRACEWELL**

March 30, 2020
Page 4

and compelling reasons warrant such a reduction."[13]  We respectfully submit that Mr. Zukerman's age and pre-existing health conditions in combination with the COVID-19 pandemic provide extraordinary and compelling reasons to modify his sentence to permit his immediate release to home confinement.  *See Basank*, 2020 WL 1481503 at *5 (The spread of COVID-19 "is measured in a matter of a single day -- not weeks, months, or years.").

Such action by this Court would not be unprecedented.  As the number of COVID-19 cases has grown, courts have increasingly taken action to protect the health of at-risk inmates and detainees.  *See United States v. Campagna*, 2020 WL 1489828 (S.D.N.Y. Mar. 27, 2020) (modifying defendant's sentence to replace his outstanding term of imprisonment with an equal period of home incarceration); *United States v. Perez*, No. 19 Cr. 297 (PAE), Amended Order, Dkt. No. 62 (S.D.N.Y. Mar. 19, 2020) (temporarily releasing pre-trial defendant from custody during the public health crisis); *Coronel v. Decker,* 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020) (ordering plaintiffs' immediate release from ICE custody); *Basank v. Decker*, 2020 WL 1481503, at *7 (same).

Mr. Zukerman makes this application knowing that the crimes he committed were serious.  He understands that a substantial term of incarceration was appropriate.  At the time the Court sentenced Mr. Zukerman, however, incarceration posed little risk to his health.  In light of this unprecedented change in circumstances, we respectfully request that the Court exercise its power to modify Mr. Zukerman's sentence and direct that he be released to home confinement to serve the remainder of his sentence.

We have informed the government of this request, and it has not yet determined its position.

---

[13] 18 U.S.C. § 3582(c)(1)(A)(i) requires that an inmate exhaust his administrative remedies or wait for 30 days to lapse following his submission of a request for relief to the warden of his facility before seeking judicial relief.  On March 27, 2020, Mr. Zukerman emailed a request for compassionate release to Otisville's warden.  (*See* Exhibit C.)  Under these exigent circumstances, however, requiring the 30-day period to pass before Mr. Zukerman could seek relief from the court would be futile and only further endanger Mr. Zukerman's health.

# BRACEWELL

March 30, 2020
Page 5

                        Sincerely,

                        /s/ Paul Shechtman

                        Paul Shechtman
                        Maggie Lynaugh

PS/ML:wr