# BRACEWELL

April 2, 2020

**VIA ECF**

Hon. Analisa Torres
United States District Court
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    United States v. Morris Zukerman (16 Cr. 194)

Dear Judge Torres:

The government's response to our motion for compassionate release shows little appreciation of the gravity of the COVID-19 pandemic and little compassion. These points bear emphasis in reply:

1. Much of the government's response is devoted to the proposition that the exhaustion provision of 18 U.S.C. §3582(c) is mandatory. Letter at 3-4. This Court has already considered that proposition and rejected it. See United States v. Perez, 17 Cr. 513 (AT)(Dkt. 98)(Apr. 1, 2019), quoting Abbey v. Sullivan, 978 F.2d 37, 46 (2d Cir. 1992)("[i]f the delay attending exhaustion would subject claimants to deteriorating health, then waiver may be appropriate"). The government seeks to distinguish Perez on the ground that his sentence was scheduled to end "within days" (actually within a few weeks). Letter at 4. But that misses the point. If the exhaustion requirement of §3582(c) is not mandatory, then the question is whether Mr. Zukerman comes within an exception to the rule -- whether requiring him to pursue his

**Paul Shechtman**
Partner

T: +1.212.508.6107    F: +1.800.404.3970
1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100
paul.shechtman@bracewell.com    bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

**BRACEWELL**

April 2, 2020
Page 2

administrative remedy could prove futile because of the potentially catastrophic health consequences and thus subjects him to undue prejudice. Id.[1]

  2. The government writes that Mr. Zukerman has "not presented a fully developed record" of his health condition and, in any event "the health issues [he has identified] were present, fully known, and considered by the Court when he was sentenced in May 2017." Letter at 3-4. Neither point is telling. Mr. Zukerman is 75 years old and suffers from diabetes, hypertension and obesity. His doctor has confirmed that history and opined that Mr. Zukerman is in the "highest risk category for complications and death from the disease if infected." That opinion is hard to dispute. See Basank v. Decker, 2002 WL 1481503 (S.D.N.Y.)("[t]he Court takes judicial notice that, for people of advanced age, with underlying health problems, COVID-19 causes severe medical conditions and has increased lethality"). And the fact that Mr. Zukerman's health issues were known to the Court at sentencing proves nothing. What was not known was that in 2020 a deadly virus would present itself such that those in prison with certain preexisting conditions would be at high risk of serious health consequences or even death. Past is often prologue, but the fact that the Court sentenced Mr. Zukerman to 70 months in 2017 does not mean that he should be confined in prison in 2020 when the world is so different.

  3. The government writes that BOP is "meaningfully address[ing] the risks posed by COVID-19" and "tak[ing] seriously the threat the pandemic poses to current inmates."

---

[1] To our knowledge, BOP has not established an expedited process to consider the compassionate release requests of at-risk inmates related to the pandemic.

**BRACEWELL**

April 2, 2020
Page 3

Letter at 4.  We have no doubt that BOP is trying to mitigate the spread of COVID-19, but the claim that the problem is under control rings hollow.  The truth is that in institutions like Otisville controlling the spread of COVID-19 is a mission impossible.  Social distancing cannot be practiced.  Inmates live in close quarters, share one large bathroom with only a handful of stalls and showers, and eat elbow-to-elbow at three-foot wide tables in the dining hall.[2]  That is a recipe for rampant infection.  None of us would allow an elderly and vulnerable loved one to live in such quarters if an alternative existed.  See United States v. Rodriguez, 03-Cr.-271-AB-1 (E.D. Pa. Apr. 1, 2020), ECF No. 135, at 16 ("prisons are ill-equipped to prevent the spread of COVID-19; the crowded conditions, in both sleeping areas and social areas, and the shared objects (bathrooms, sinks, etc.) . . . facilitate transmission").[3]

---

[2]     On March 31, 2020, BOP directed that inmates in all institutions be confined to their cells for 14 days "to decrease the spread of the virus." Bureau of Prisons COVID-19 Action Plan: Phase Five, Mar. 31, 2020, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.  But Otisville does not have cells.  Instead, inmates have been "quarantined" to their dormitories and common areas.  In other words, their living conditions remain very much the same.

[3]     BOP's containment measures have already proved inadequate and its counting of infected cases suspect.  At FCI Oakdale in Louisiana, for example, the BOP listed eight COVID-19 cases as of March 29 and the Washington Post reported 31.  Rodriguez, 03-Cr.-271-AB-1 (E.D. Pa. Apr. 1, 2020), ECF No. 135, at 17.  BOP has now stopped testing for the virus at the facility because the outbreak is so widespread.  Fifteen Oakdale inmates have been hospitalized and three have now died.  See Westwood, Rosemary, "Third Federal Inmate Dies from COVID-19," NPR, Apr. 1, 2020.  The numbers in other facilities are growing exponentially.  According to the BOP website, on March 29 there were 27 coronavirus cases within its facilities; only three days later that number has grown to 94.

# BRACEWELL

April 2, 2020
Page 4

      4.    As a backstop, the government argues that Mr. Zukerman "is not an appropriate candidate for release in light of the seriousness and duration of his criminal conduct." Letter at 4-5. As we said in our initial submission, Mr. Zukerman's criminal conduct was plainly serious. But he has served just short of 3 years in prison and paid $37.5 million in restitution and $10 million in fines. He has not gone unpunished. Moreover, several times in its submission, the government writes that Mr. Zukerman has completed "only approximately half of the 70-month term of imprisonment imposed by the Court." Letter at 4. But that math is flawed. With good time credit, Mr. Zukerman would have been released from prison to a halfway house and/or home confinement after 48 months. See 18 U.S.C §3624(b); 18 U.S.C. §3624(c)(1) & (2). Releasing him now would mean that he would serve nearly 70 percent of his originally-set prison term.[4]

## CONCLUSION

      In 2017, the Court imposed a firm sentence on Mr. Zukerman for serious criminal conduct. But it did not intend to impose a potential death sentence. If Mr. Zukerman were required to remain in Otisville throughout the COVID-19 pandemic, it is not hyperbolic to say that could be the result. If there were any reason to believe that BOP would release Mr. Zukerman on its own, we would not be pressing this motion. But the government's response gives little hope. And if the Warden denies Mr. Zukerman's application, the notion that he would remain in Otisville while an appeal process drags on is chilling. We are in the midst of an unprecedented pandemic,

---

[4]     The math is this: $(70 \times 6/7) - 12 = 48$; $33 \div 48 = .687$. This calculation, of course, does not take into account the sentence reduction that Mr. Zukerman received under the First Step Act.

# BRACEWELL

April 2, 2020
Page 5

and Otisville is not a place where a vulnerable defendant who poses <u>no</u> risk to public safety should have to call home.

        Respectfully submitted,

        /s/ Paul Shechtman

        Paul Shechtman
        Maggie Lynaugh

PS/ML:wr
cc:    AUSA Stan Okula
        AUSA Edward Imperatore