USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/3/2020____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

      -against-

MORRIS E. ZUKERMAN,

                Defendant.

16 Cr. 194 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      Morris E. Zukerman, a prisoner serving his sentence at FCI Otisville ("Otisville"), moves for a reduction of his term of imprisonment under the federal compassionate release statute, codified at 18 U.S.C. § 3582(c)(1)(A). Def. Letter, ECF No. 112. He asks that he be "transferred to supervised release with a special condition of home confinement for the duration of his sentence." *Id.* at 1. For the reasons stated below, Zukerman's motion is GRANTED only to the extent that his sentence is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration.

## BACKGROUND

      On June 27, 2016, Zukerman pleaded guilty to one count of tax evasion and one count of corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws in violation of 26 U.S.C. §§ 7201 and 7212(a). *See* June 27, 2016 ECF entry. On March 21, 2017, the Court sentenced him to 70 months of incarceration followed by one year of supervised release. ECF No. 58. The Court also imposed a fine of $10,000,000 and ordered that $37,574,951.88 be paid in restitution. *Id.*; *see also* ECF No. 59. Zukerman surrendered to Otisville on June 26, 2017, and he has paid the fine and restitution in full. Def. Letter at 1–2; ECF No. 109. Because Zukerman began serving his sentence on June 26, 2017, "he was originally scheduled to be released in July 2022." Gov't Opp. at 1, ECF No. 114. Both parties acknowledge, however, that under the First Step Act,

Pub. L. No. 115-391, 132 Stat. 5194 (2018), Zukerman's term of imprisonment could be reduced, meaning that Zukerman could be released to home confinement as early as May 2021. Def. Letter at 2; Gov't Opp. at 4.

Zukerman is 75 years old and suffers from diabetes, hypertension, and obesity. Def. Letter at 1. He is currently serving his sentence at Otisville, where, as of March 27, 2020, at least one inmate has tested positive for COVID-19. *Id.*; *see also* COVID-19 Tested Positive Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. At Otisville, "120 inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers, and sleep together in bunks beds only a few feet apart that are divided principally between two dormitories (as opposed to individual cells)." Def. Letter at 3. "The two dormitories are separated only by the shared bathroom." *Id.* According to Zukerman, "[t]here is no place to self-isolate." *Id.* On March 31, 2020, the Federal Bureau of Prisons (the "BOP") directed that inmates in all institutions be confined to their cells for 14 days "to decrease the spread of the virus." Bureau of Prisons COVID-19 Action Plan: Phase Five (Mar. 31, 2020), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. At Otisville, however, there are no cells. Def. Reply at 3 n.2. Inmates, therefore, are quarantined to their dormitories and common areas. *Id.* Zukerman's doctor, Timothy Dutta, M.D., writes that, based on the Centers for Disease Control and Prevention (the "CDC") guidelines for COVID-19, Zukerman is in "the highest risk category for complications and death from the disease." *See* Dutta Letter, ECF No. 112-2.

On March 27, 2020, Zukerman submitted a request for compassionate release to Otisville's warden. *See* ECF No. 112-3. On March 30, 2020, having not yet received a response, Zukerman moved this Court to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. He states that the "risk COVID-19 poses to [his] health amounts to an

2

'extraordinary and compelling' circumstance that warrants transferring [him] to supervised release with a special condition of home confinement for the duration of his sentence." Def. Letter at 1. The Government argues that Zukerman's motion should be denied for two reasons: first, because Zukerman has not exhausted his administrative remedies under § 3582(c)(1)(A), which requires that a defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass; and second, because Zukerman is not an appropriate candidate for release given the seriousness and duration of his offense. Gov't Opp. at 1.

The Court disagrees. First, the Court holds that Zukerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic. Second, although the sentence imposed on Zukerman was wholly warranted, the Court holds that the threat posed by COVID-19, in light of his age and medical status, constitutes an extraordinary and compelling reason to modify Zukerman's sentence.

## DISCUSSION

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i)     extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Zukerman must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses these requirements in turn.

I.  Exhaustion

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)).[1] However, as this Court and others have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); *see United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile").

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503

---

[1] The Court need not decide whether § 3582(c)'s exhaustion requirement is a jurisdictional requirement or merely a mandatory claim-processing rule. *See Monzon*, 2020 WL 550220, at *2 (describing split between courts on that question).

4

U.S. 140, 146–47 (1992)).[2]  There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id.* Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id.* at 119.  Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

All three of these exceptions apply here.  "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile.  Moreover, the relief the agency might provide could, because of undue delay, become inadequate.  Finally, and obviously, [Zukerman] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; *see Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death"); *see also Perez*, 2020 WL 1546422, at *2–3 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the

---

[2] The Supreme Court has stressed that for "a statutory exhaustion provision . . . Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).  Even when faced with statutory exhaustion requirements, however, the Supreme Court has allowed claims to proceed notwithstanding a party's failure to complete the administrative review process established by the agency "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate," so long as the party presented the claim to the agency. *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976). That reasoning explains the Second Circuit's holding that even statutory exhaustion requirements are "not absolute." *Washington*, 925 F.3d at 118.  Zukerman has presented his claim to the warden, *see* ECF No. 112-3, so the situation here is analogous.

5

vulnerable defendant contracting COVID-19). Here, even a few weeks' delay carries the risk of catastrophic health consequences for Zukerman. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and alterations omitted). Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion . . . should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In Zukerman's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

The Court recently granted a motion for compassionate release in *United States v. Perez*, 2020 WL 1546422, at *3–4, where it held that waiver of the exhaustion requirement was justified. The Government argues that *Perez* is distinguishable because in that case, the inmate presented "unusual factors" that weighed in favor of his release, including that (1) he was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two

vicious beatings while he was incarcerated, (2) his three-year sentence was scheduled to end within days, and (3) the Government did not object on the merits to his release. Gov't Opp. at 4. These arguments are unavailing.

Here too, there are a number of factors that weigh in favor of Zukerman's release. First, it is undisputed that Zukerman is 75 years old and suffers from diabetes, hypertension and obesity. Def. Letter at 1. His doctor opines that Zukerman is in the "highest risk category for complications and death from the disease if infected." Dutta Letter; *see also Basank v. Decker*, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The Court takes judicial notice that, for people of advanced age, with underlying health problems, COVID-19 causes severe medical conditions and has increased lethality.") (citation omitted). Moreover, Zukerman's risk is heightened because of his environment; at Otisville, inmates live in close quarters, share one large bathroom with only a handful of stalls and showers, and eat elbow-to-elbow at three-foot wide tables in the dining hall. Def. Reply at 3. Such conditions make controlling the spread of COVID-19 more challenging and the risk to vulnerable inmates, such as Zukerman, that much greater. *See United States v. Rodriguez*, 03 Cr. 271-1, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("[P]risons are ill-equipped to prevent the spread of COVID-19 . . . the crowded conditions, in both sleeping areas and social areas, and the shared objects (bathrooms, sinks, etc.) . . . facilitate transmission." (citation omitted)).

Second, the fact that Zukerman's release is not scheduled to end "within days," Gov't Opp. at 4, misses the point and understates the gravity of the COVID-19 pandemic. Although Zukerman's original release date may be far off, the threat of COVID-19 is at his doorstep. And although the Government focuses on the potential differences between Perez and Zukerman, the Government fails to take into account the undisputed constants in their cases—they are both individuals with serious underlying illnesses who are (1) detained in jails where positive cases of the virus have been found,

and (2) unable to take adequate measures to protect themselves.

Accordingly, the Court holds that Zukerman's advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement.[3]

II. <u>Extraordinary and Compelling Reasons for Release</u>

The Court also finds that Zukerman has set forth "extraordinary and compelling reasons" to modify his sentence, 18 U.S.C. § 3582(c)(1)(A)(i), because of the great risk that COVID-19 poses to an elderly person with underlying health problems.

The authority to define "extraordinary and compelling reasons" has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, comment n.1. *See United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4–5 (S.D.N.Y. Jan. 8, 2020). Two components of the definition are relevant. First, extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

Zukerman's age, combined with his diabetes, hypertension, and obesity, satisfy that requirement. According to the World Health Organization, the populations most at risk of suffering a severe form of the disease include "older people, and those with underlying medical problems like

---

[3] A number of courts have denied applications for sentence modification under § 3582(c)(1)(A) brought on the basis of the risk posed by COVID-19 on the ground that the defendants failed to exhaust administrative remedies. *See, e.g., United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Hernandez*, No. 19 Cr. 834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020). But in several of those cases, the defendant was not in a facility where COVID-19 was spreading, and in none of them did the defendant present compelling evidence that his medical condition put him at particular risk of experiencing deadly complications from COVID-19. In this case, unlike those, Zukerman has established that enforcing the exhaustion requirement carries the real risk of inflicting severe and irreparable harm to his health.

cardiovascular disease [and] diabetes." Coronavirus, World Health Organization (Mar. 23, 2020), https://www.who.int/healthtopics/coronavirus#tab=tab_1. The CDC similarly has explained that individuals over the age of 65 and people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity, are at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (Mar. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html. And this risk for individuals like Zukerman is substantial; data recently released by the CDC indicates that approximately 80% of deaths from COVID-19 in the United States occur in individuals age 65 or older, and that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent. Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020, Centers for Disease Control and Prevention (Mar. 26, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. Given that inmates at Otisville live in close quarters, social distancing is impracticable if not impossible, making it difficult for Zukerman to protect himself from the spread of this dangerous and highly contagious virus.

This Court and others have held that compassionate release is justified under such conditions. *Perez*, 2020 WL 1546422, at *4; *see Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying . . . immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL 1627331, at *7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and abnormal liver enzymes in a pattern most consistent with non-

9

alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 . . . includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving compassionate release for defendant where his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

The Government argues that Zukerman is not an appropriate candidate for release considering the seriousness and duration of his criminal conduct. Gov't Letter at 4–5. The Court does not disagree that Zukerman's misconduct was egregious. As the Court observed at sentencing, "Zukerman evaded taxes totaling millions of dollars. He was driven not by need, but by unmitigated greed. He entangled himself in a web of lies and deceit, lying to his tax preparer, and then hiring lawyers to defend his lies. He went to such extraordinary lengths in order to cheat. These frauds were deliberate and calculated. Zukerman thought himself to be above the law." Sentencing Tr.,

10

Mar. 21, 2017, at 37, ECF No. 60.  The severity of Zukerman's conduct remains unchanged.  What has changed, however, is the environment where Zukerman is serving his sentence.  When the Court sentenced Zukerman, the Court did not intend for that sentence to "include incurring a great and unforeseen risk of severe illness or death" brought on by a global pandemic.  *Rodriguez*, 2020 WL 1627331, at *12.

Accordingly, the Court finds that Zukerman has demonstrated extraordinary and compelling reasons justifying a modification of his term of imprisonment.

## CONCLUSION

For the reasons stated above, Zukerman's motion for modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) is GRANTED only to the extent that: it is ORDERED that Zukerman's sentence is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration, without electronic monitoring and on such conditions as the Probation Department deems necessary, to be followed by the term of supervised release previously imposed by the Court.  It is further ORDERED that Zukerman be released immediately to begin his term of home incarceration.  Zukerman shall remain self-quarantined for 14 days after release.  Upon release, Zukerman shall call Probation to schedule an appointment.

The Clerk of Court is directed to terminate the motion at ECF No. 112.

SO ORDERED.

Dated: April 3, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge